UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Crim **No. 1:19-cr-10190-PBS** |
| | ) |
| JOAO PEDRO MARQUES GAMA | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

Joao Pedro Marques Guimares Gama is a 23-year-old young man whose reckless decision to become part of a fledgling gang is a common story writ large: the enticement of the appearance of community, power and relevance as seen through the immature brain of a drug-addicted young man who could not foresee the tragic consequences that his behavior will wreak upon himself, his family and his community. Mr. Gama is a different young man today; he credits his arrest and current incarceration as saving his life. As he tells it, "[t]oday I count myself very lucky to have escaped being associated with such lifestyle. I could not be more grateful. I am certainly ready to take all the necessary steps needed to pay my debt to society and move forward." See Exhibit A. As Mr. Gama tells the court, he found commonality, solace and inspiration from a quote from Malcolm X. "I escaped from being what I inevitably would have been: a fading drug addict, stealing enough for food and narcotics, or a dead criminal in a grave. There is no shame in having been a criminal, but to remain a criminal, that is a shame." See Exhibit A. Mr. Gama has fully accepted responsibility for his crimes and has matured and flourished during his pretrial detention. He will guarantee this Court and society

that he won't be back down that road again.  While incarcerated, Mr. Gama's self-directed and tangible efforts to gain insight into his substance use disorder that resulted in his criminal conduct in order not to repeat it, coupled with availing himself of numerous educational and vocational programming demonstrate that the period of incarceration called for by the Sentencing Guidelines is unwarranted.  For the reasons that follow, the defendant submits that a below guidelines sentence of 48-months imprisonment, with a three-year period of supervised released that includes specific conditions to address the defendant's substance use disorder to follow is consistent with the factors set forth in 18 U.S.C. § 3553 (a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing.  United States v. Kimbrough, 128 S.Ct. 558 (2007); United States v. Booker, 125 S.Ct. 738 (2005); United States v. Martin, 520 F.3d 87 (1st Cir. 2008); United States v. Rodriguez, 527 F.3d 221 (1st Cir. 2008).

## BACKGROUND

Mr. Gama was arrested and charged with a Criminal Complaint charging him with RICO Conspiracy pursuant to 18 U.S.C. § 1962(d), Conspiracy to Commit Robbery pursuant to 18 U.S.C. § 1951, Conspiracy to Distribute Controlled Substances pursuant to 18 U.S.C. §846, Dealing in Firearms without a License pursuant to 18 U.S.C. §922(a)(1)(A) and Alien in Possession of a Firearm pursuant to 18 U.S.C. §922(G)(5).  See ECF No. 4.  He was indicted on the same offense on June 5, 2019.  See ECF No. 53.  He entered plea discussions early with the Government

which were understandably delayed by pandemic related issues coupled with lack of Zoom or phone access between counsel and the defendant in the Barnstable House of Corrections where Mr. Gama was held as a pretrial detainee. He pled guilty on December 10, 2020.

## ARGUMENT

### A SENTENCE OF 48 MONTHS IMPRISONMENT IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO EFFECTUATE THE SENTENCING GOALS OF 18 U.S.C. § 3553 (a).

As the Court is well aware, the Sentencing Guidelines are no longer are binding on the Court. United States v. Booker, 125 S.Ct. 738 (2005). Instead, under 18 U.S.C. § 3553 (a), the Court should impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in Section 3553(a)(2). In so doing, a sentencing court "may not presume that the Guidelines range is reasonable" but, instead, must using the factors set forth in § 3553 (a), "make an individualized assessment based on the facts presented." Gall v. United States, 128 S.Ct. 586, 596 (2007). Thus, district courts are now permitted to and, in the appropriate case, directed to consider whether disagreement with the Sentencing Commission's underlying policy results in a sentence that is unreasonably high. Kimbrough, supra, 128 S.Ct. at 575; United States v. Boardman, 528 F.3d 86 (1st Cir. 2008); Martin, supra, 520 F.3d at 93-94.

The First Circuit has stressed that Kimbrough requires a "more holistic inquiry" than simply relying on the sentencing guidelines and that "section 3553 (a) is more than a laundry list of discrete sentencing

3

factors; it is, rather, a tapestry of factors, through which runs the tread of an overarching principle." United States v. Yonathan Rodriguez, 527 F.3d 221, 228 (1st Cir. 2008).  That overarching principle is to "impose a sentence sufficient but not greater than necessary." Id.  In reaching a decision on what constitutes an appropriate sentence, the district court should "consider all the relevant factors" and "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." Id. (Emphasis added).

In this case, the 108 months to 135 months sentencing range suggested by the Sentencing Guidelines should be given minimal weight in determining the sentence that Mr. Gama receives; instead, the now-familiar § 3553 (a) factors dictate a sentence of 48 months.

1. **The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

    **(a) Nature and Circumstances of Offense**

The offense conduct here is very serious, and Mr. Gama admitted that he was a participant in several sales of guns and drugs.  However, as will be further detailed below, Mr. Gama was lulled into gang membership and committed these offenses while under the throes of an insidious drug addiction;  enabling his drug addiction was tied to his performance for the enterprise that was feeding that beast.  As such, the circumstances of the offense conduct, although serious, should be put in the context of Mr. Gama's lack of criminal convictions and his uncontrollable thirst for drugs, particularly when assessing the context of his false posturing and

4

braggadocio on behalf of PCM during such events as the conspiracy to commit an armed robbery. Having accepted responsibility for his conduct and being able to review it in the illumination of sobriety, there is no question that this significant misstep has made an indelible imprint upon his life.

### (b) Mr. Gama's History and Circumstances

Mr. Gama engaged in criminal conduct that was propelled by severe substance use disorder and sexual trauma issues.

Mr. Gama was born to a life of deprivation. His father abandoned his family at his birth and he has never met him. PSR ¶ 118. He was raised by his mother who was arrested and jailed on multiple occasions; when she was unavailable, he was raised by his grandparents with whom he had loving relationship. Unfortunately, his grandfather was diagnosed with cancer when he was approximately 12 years old; his family had to choose between money for food or medication; too poor to afford the latter, his grandfather tragically passed away shortly afterwards. PSR ¶ 118

He moved to Massachusetts when he was 17 years old. He lived briefly with family but moved out on his own; he was homeless for a while but ultimately lived in a friend's garage, working on a variety of jobs. PSR ¶ 126  When he moved out on his own, he began experimenting with alcohol and drugs, starting with marijuana and cocaine and quickly progressed to using it daily. PSR ¶ 135  He added Percoset, Adderal and Xanax to his drug use by the age of 19, and Ecstasy, Methamphetamines and LSD, whenever available, at the age of 20. From the time that he

5

started abusing drugs, he never had a day that he wasn't using and high on some type of drug until the day of his arrest; he almost lost his life when he overdosed on four different occasions. He abused drugs in the company of his fellow PCM members and although he tried to stop on several occasions, his withdrawal symptoms were too intense and painful. When he wasn't using some of the drug proceeds himself, all of the money that he made during his stint with PCM went towards supporting his drug habit. PSR ¶¶ 135-138

He credits his arrest and detention with saving his life. He has worked vigorously to self-educate and support his sobriety. Although he never received formal substance abuse disorder treatment, he has engaged in self-help programs such as AA/NA at the Barnstable House of Corrections when offered prior to COVID-19. He wants ongoing treatment and, subject to approval by the Bureau of Prison, is an eligible candidate for the RDAP program, which Probation recommends. See PSR ¶¶ 137-138.

Mr. Gama completed 10th grade in Brazil but did not complete further education in the U.S. when he arrived. PSR ¶ 139 However, since his detention, he has since studied and improved his English speaking skills; he was especially proud of his ability to write his letter of acceptance of responsibility in English.

Mr. Gama has not been idle during his detention in spite of the obstacles of COVID-19. He received his GED in March 2021, and received Certificates of Completion in Building a Strong Vocabulary for Work

6

Readiness, Carpentry, HVAC, English as a Second Language, Masonry and Reading For Information/Career Readiness. See Exhibits C and D. He has received high marks for his commitment and enthusiasm to learn, and his participation in faith-based programs. See Exhibit B.

And he's been a hard worker and given back to society during his incarceration. He's worked consistently at the Barnstable House of Corrections in cleaning and kitchen services, offering himself as the need arises; he was recently awarded the position of pod worker. See Exhibit G.

Mr. Gama has the support of his family who acknowledges that they could not stop the young man that they loved from the calamitous descent into drugs, negative peer influence and ultimately, the consequences of his conduct in this case. Keeping in contact with him since his incarceration, they see a young man who has completely changed and has accepted responsibility for his behavior and has worked hard to prove himself worthy. See Exhibit F.

Finally, Mr. Gama has big dreams for himself. He wants to be an architectural designer. See Exhibit A. He doesn't ever see himself in a circumstance like this again. He is clean, motivated and sees meaningful and lawful opportunities to better himself and society in the future.

Given these positive prognostic signs and the nature of the offenses at issue, a sentence lower than the advisory guideline range suggested by Probation will be sufficient but not greater than necessary to effectuate the sentencing goals of 18 U.S.C. § 3553 (a).

## 2. The Need for the Sentence Imposed to Promote Certain Statutory Objectives:

### (A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense

The offense conduct here is serious and merits some punishment. In these circumstances, however, the Court should consider whether a significant sentence of 48 months – a sentence below the guideline range will be significant enough punishment which will far better reflect the seriousness of the defendant's conduct than does the 108 months to 135 months suggested by Probation's determination of Mr. Gama's offense level and recommended sentence. A sentence of 48 months will have given Mr. Gama a sufficient period of punishment that will firmly entrench the notion that any further criminal activity by him will not be tolerated, but will not unnecessarily further his exposure to the Covid-19 virus as described below. The public's right to just punishment for the offense is vindicated by Mr. Gama's willingness to accept responsibility for his criminal conduct, his conviction and punishment by a reasonable sentence that is consistent with his general lack of criminal history, his recovery from his longstanding substance use disorder, the support and love of his family, and the significant work that he has accomplished towards embracing sobriety, self-education and a strong work ethic.

### (B) to afford adequate deterrence to criminal conduct

There can be little doubt that the incarceration that Mr. Gama has endured will provide overwhelming deterrence to any thought of relapse in

8

substance abuse or criminal conduct in the future.  As a matter of general deterrence, the efficacy of a sentence longer than 48 months is unsupported.

At the time of the commission of the offenses, Mr. Gama was a young man, born and raised under challenging circumstances, who was wooed into the gang lifestyle under the sway of a serious drug addiction. The World Health Organization defines 'adolescents' as individuals in the 10-19 years age group and 'youth' as the 15-24 year age group. While 'young people' covers the age range 10-24 years.[1]  "Among family variables, poverty, absence of biological parents, low parental attachment to the child, and low parental supervision all increase the probability of gang membership. Three school variables are very significant risk factors: low expectations for success in school (both by parents and students), low student commitment to school, and low attachment to teachers. Along with school factors, peers have a very strong impact on gang membership. Associating with delinquent friends and unsupervised "hanging around" with these delinquent friends are a potent combination. Important individual risk factors identified in the Rochester study are low self-esteem, numerous negative life events, depressive symptoms, and easy access to drugs or favorable views toward drug use. Finally, youth who use drugs and are involved in delinquency -- particularly violent delinquency -- are more likely to become gang

---

[1] https://www.who.int/southeastasia/health-topics/adolescent-health

9

members than are youth who are less involved in delinquency and drug use."[2]

Youth gangs represent a spontaneous effort by children and young people to create, where it does not exist, an urban space in society that is adapted to their needs, where they can exercise the rights that their families, government, and communities do not offer them. Arising out of extreme poverty, exclusion, and a lack of opportunities, gangs try to gain their rights and meet their needs by organizing themselves without supervision and developing their own rules, and by securing for themselves a territory and a set of symbols that gives meaning to their membership in the group. This endeavor to exercise their citizenship is, in many cases, a violation of their own and others' rights, and frequently generates violence and crime in a vicious circle that perpetuates their original exclusion.[3]

As the Court is undoubtedly aware, PCM was a fledging gang that was ripe to attract young, at-risk youth like Mr. Gama. Gama was barely 20 years old when he first recruited to PCM as a rudderless, drug-addicted youth. When he was arrested and attained sobriety during his detention, he was able to reflect upon the terrible choices that he made and make quantifiable and demonstrable changes for the better. Society profits when a convicted criminal truly understands their mistakes and

---

[2] https://ojjdp.ojp.gov/sites/g/files/xyckuh176/files/jjbulletin/9808/why.html

[3] Organization of American States (OAS). (2007). *Definition and classification of gangs: Executive summary*. Washington, DC: Department of Public Security. P. 5

embraces positive change. A 48-month sentence will allow Mr. Gama to continue his metamorphosis into a productive addition to society; unnecessarily prolonging incarceration will not benefit either. A 48-month sentence reflects these twin purposes.

### (C) The Need to Avoid Unwarranted Disparities

A significant factor for the court to consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Mr. Costa, the principal of the PCM enterprise and who was significantly older than Mr. Gama, was committed to a 60-month sentence. Breno Henrique da Silva was sentenced to 108 months, Matheus Marley Machado was sentenced to 27 months, and Alvaro dos Santos Melo was sentenced to 48 months. The defendant believes that given his early acceptance of responsibility, his engagement in sobriety, educational, vocational and self-help programs and the support of his family, that a sentence of 48-months does advance an unwarranted disparity and is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in Section 3553(a)(2).

### (D) A Compassionate and Fair Sentence is Consistent with the Factors Set Forth in 18 U.S.C. § 3553 (a) and Will Result in a Sentence that is Sufficient, but Not Greater than Necessary, to Effectuate the Purposes of Sentencing

The Court has broad discretion to question and ameliorate the guideline range where, as here, the consequences of the Sentencing Commission's policy are, unsupported by past sentencing practices, and

11

lead to a result inconsistent with the sentencing goals expressed in 18 U.S.C. § 3553 (a). Martin, supra, 520 F.3d at 88-96 (approving 91 month downward variation from career offender guideline; "Kimbrough…opened the door for a sentencing court to deviate from the guidelines in an individual case even though that deviation seemingly contravenes a broad policy pronouncement of the Sentencing Commission.") See also U.S. v. Bryant, 571 F.3d 147, 153 (1st Cir. 2009)(§ 3553 (a) (factors, in context of "enormous" disparity between career offender and otherwise applicable guideline, justified variance).  That discretion is at its apex where a particular guideline appears poorly supported empirically, perhaps suggesting an abdication of the Sentencing Commission's institutional role; in such a case the sentencing court's institutional advantage makes it far better suited to craft a just sentence.  Kimbrough, supra 128 S.Ct. at 567, 574.  See also Gall, 128 S.Ct. at 598 (recognizing institutional advantage of experienced district court judges who "see so many more Guidelines sentences than appellate courts do")(citing Koon v. United States, 518 U.S. 81 (1996)).

In that vein, the Court should and must take into consideration the deadly effect that the ongoing Covid-19 pandemic has had upon an incarcerated population.  Fourteen months into the pandemic, the failure to control Covid-19 in federal detention remains "both a public health catastrophe and a moral one."[4]  In the Federal Bureau of Prisons (BOP), the disease has infected incarcerated individuals at a rate of 4.77 times

---

[4] https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html

12

the general population.[5]  Virtually all of the precautionary measures are designed to keep people out of crowded places and to require "social distancing" to lessen the spread of the virus because it is highly contagious. The Centers for Disease Control and Prevention ("CDC") advise that the virus passes through coughing and by contact with surfaces.[6]  New data published in the New England Journal of Medicine found that the highly-contagious "virus can remain viable and infectious in aerosols for hours and on surfaces up to days."[7]  The CDC also urges social distancing—every person should remain at a distance of at least six feet from every other person.[8]  Proper hygiene, including frequent cleaning of all surfaces and frequent, thorough hand washing is also recommended.

COVID-19 presents an even worse threat in high-risk settings like prisons. The recommended measures for mitigating the spread of COVID-19 are not readily available for incarcerated inmates or those who must interact with them. Congregate settings such as jails and prisons allow for rapid spread of infectious diseases that are transmitted person to

---

[5] https://federaldefendersny.org/assets/uploads/BOP_COVID-19_Charts_and_Graphs.10.6.2020.pdf

[6] *How It Spreads*, CDC (last accessed 03/21/2020), https://www.cdc.gov/coronavirus/2019-ncov/prepare/transmission.html.

[7] Neeltje van Doremalen, et. al, Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1, New England J. Med., (March 17, 2020), nejm.org/doi/10.1056/NEJMc2004973.

[8] *See* supra note 7; see also Lisa Maragakis, "Coronavirus, Social Distancing, and Self-Quarantine," John Hopkins Univ. (last accessed March 21, 2020) https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/coronavirus-social-distancing-and-self-quarantine.

person, especially those passed by droplets through coughing and sneezing.  In prison people are confined in close proximity to one another and to the staff. When people must share sleeping areas, dining halls, bathrooms, showers and other common areas, the opportunities for transmission are greater.  Further, both the inmates and employees of the BOP are highly vaccine-averse populations and neither can be forced to take the vaccine.

The Department of Justice Office of the Inspector General (OIG) recently found that "[maintaining a safe, secure and humane prison system remains a challenge for the DOJ and the BOP.[9]  Variants and other cases are still on the rise, such as the recent spike in Michigan and states near Pennsylvania where Mr. Gama might end up serving his sentence. Even though Mr. Gama is now vaccinated, the CDC readily states that the variants, the long-term success of vaccines, and the necessity of further vaccines in the future is still largely unknown and under continued investigation[10]. There is a special recommendation for those that have been vaccinated to still be extremely vigilant.[11]

Any sentence that would effectively prolong Mr. Gama's ongoing exposure to infection, illness and possibly death defiles our society's guiding spirit of justice, humanity and redemption.  Like many courts, this Court should give limited consideration to the guideline range and

---

[9] https://oig.justice.gov/sites/default/files/reports/2020.pdf

[10] *See CDC When You've Been Fully Vaccinated*:  https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html   Retrieved April 27, 2021.
[11] *Id.*

14

instead impose a sentence that more adequately considers all of the goals of sentencing as captured in the 18 U.S.C. § 3553 (a) factors as stated herein. Those factors militate a sentence of no higher than 48-months' imprisonment.

## CONCLUSION

For the foregoing reasons, this Court should impose a sentence of 48-months of imprisonment, three years of supervised released, a recommendation to the RDAP program or a substance use disorder treatment as to this Court seems just and proper.

Respectfully Submitted,<br>
Joao Pedro Marques Gama<br>
By his counsel,

Date: 05/16/2021                /s/ Vivianne Jeruchim_____
                                Vivianne Jeruchim, Esq.
                                BBO #547598
                                Jeruchim & Davenport, LLP
                                50 Congress St., Suite 615
                                Boston, MA  02109
                                617/720-6047

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on May 16, 2021.

Date: 05/16/2021                /s/ Vivianne Jeruchim_____
                                Vivianne Jeruchim, Esq.